IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| K.C., a minor child, by and through his parents and next friends, Jenna Blizzard and Hunter Coughran; JENNA BLIZZARD, individually; and HUNTER COUGHRAN, individually,<br><br>      Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 23-CV-339-DES<br>)<br>)<br>)<br>) |

**OPINION AND ORDER**

This matter comes before the Court on Defendant's Motion Quash Deposition Subpoena (Docket No. 73). On July 30, 2025, Defendant, the United States of America, filed the present Motion seeking an Order Quashing the Deposition Subpoena issued to Scott Rosenthal pursuant to Fed. R. Civ. P. 26(c) and 45(d)(3). Plaintiffs filed a Response to the Motion on July 14, 2025 (Docket No. 74) to which Defendant filed its Reply on July 28, 2025 (Docket No. 75). The issues pertaining to the Motion to Quash have been fully briefed. In addition to the motion, response, and reply, the Court conducted a hearing on August 5, 2025, and heard evidence and arguments from the parties. For the reasons set forth at the motion hearing and as indicated below, Defendant's Motion to Quash Deposition Subpoena is GRANTED.

**I.    Background**

This is a medical malpractice birth injury case brought by Plaintiffs pursuant to the Federal Torts Claims Act ("FTCA") against the United States of America alleging the negligent management of Plaintiff Jenna Blizzard's labor and delivery by obstetrician Calvin Monroe, M.D.[1]

---

[1] At the time of the alleged negligent acts and omissions, Dr. Monroe was an employee of Northeastern Oklahoma Community Health Centers ("NeoHealth"). NeoHealth was a Department of Health and Human Services ("HHS")

1

The issue at trail in this matter is whether during Dr. Monroe's management of Ms. Blizzard's induction, labor, and delivery, he "use[d his] best judgment and appl[ied] with ordinary care and diligence the knowledge and skill that is possessed and used by other specialists in good standing engaged in the same special field of practice at that time." Okla. Civil Jury Instr. 14.2. This is the same liability question at issue in all medical malpractice cases. See *Smith v. Hines*, 261 P.3d 1129, 1133 (Okla. 2011) (setting forth elements of medical negligence claim). (Docket No. 73 at 2).

The parties have engaged in discovery, both written and oral, in which information regarding whether Dr. Monroe ever received treatment for any mental health and/or substance abuse problems during his professional career was sought. *Id.* at 3. In response to Interrogatories, the United States invoked Dr. Monroe's right to privacy but further responded that "[b]efore and at the time of all obstetrical care at issue in plaintiffs' complaint, no." (Docket No. 73-3 at 2). During his deposition, Dr. Monroe testified that the treatment he sought was after August of 2020,[2] had nothing to do with him no longer being employed with NEO Health, and did not exist at the time he was providing care to the Plaintiffs in this case. (Docket No. 73 at 3). This information was also sought from the obstetrical nurses who were present at the time of the delivery at issue. *Id.* at 3-4. The nurses who testified "affirmed that they had no knowledge of [Dr. Monroe having] any issues at the time of K.C.'s delivery." *Id.* at 4. Despite the testimony and evidence in the case, Plaintiffs submitted to Defendant a proposed Rule 30(b)(6) Notice seeking the deposition of Scott Rosenthal, NEOHealth's Chief Executive Officer,[3] who is not a medical doctor and who did not

---

grant-recipient and federally-funded clinic. 42 U.S.C. § 254(b). Therefore, Dr. Monroe's as an employee of NeoHealth, an HHS grantee, he is a deemed an employee of the Public Health Service who, like NeoHealth, enjoys Federal Tort Claims Act ("FTCA") coverage. Accordingly, the United States is the only properly named Defendant in this case. 42 U.S.C. § 233(a),(c), (g); 28 U.S.C. § 2679(b)(1).

[2] August 6, 2020 to August 8, 2020 are the dates of the obstetrical care and treatment at issues in this case. (Docket No. 2 at 5-6).

[3] The record reflects that no Rule 30(B)(6) notice was ever actually filed by Plaintiff, however, Plaintiffs did send a Subpoena to Mr. Rosenthal and Notice of Deposition to Defendant regarding the same. (Docket No. 73-1).

have any involvement in the care and treatment provided to Ms. Blizzard or K.C. *Id.* Defendant seeks to Quash the Subpoena for Deposition as any testimony by Mr. Rosenthal would be irrelevant, unduly burdensome, disproportional to the needs of the case, and invasive of Dr. Monroe's privacy. (Docket No 73).

**II.     Analysis**

Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable. Fed. R. Civ. P. 26(b)(1).

On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

**(i)**     the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

**(ii)**    the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

**(iii)**   the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

**a. Defendant has Standing to Quash the Deposition Subpoena.**

Discovery from a non-party is generally governed by the subpoena standards set forth in Rule 45. See, e.g., Fed. R. Civ. P. 45(a), (d); *Rhea v. Apache Corp.*, 833 F. App'x 186, 190 (10th Cir. 2020) (unpublished). Mr. Rosenthal is a non-party; therefore, Plaintiffs must subpoena him

3

for testimony. Plaintiffs argue Defendant has no standing to seek to quash the deposition of a non-party. Because standing is a jurisdictional question, the Court will address it first.

While a party ordinarily has no standing to object to a subpoena issued to a non-party, that general rule does not apply where, as here, "the party claims some personal right or privilege with regard to the documents sought." 9A WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: Civil 2d § 2459, at 41 (1995 ed.). *Atl. Inv. Mgmt., LLC v. Millennium Fund I, Ltd.*, 212 F.R.D. 395, 398 (N.D. Ill. 2002). The United States of America, a party, brought this motion under Rule 26 because the proposed subpoena seeks irrelevant and privileged information and is unduly burdensome and disproportional to the needs of the case. (See Docket No. 73).  The United States has standing to obtain an order "forbidding the . . . discovery." Fed. R. Civ. P. 26(c)(1)(A).

Although the subpoena to Mr. Rosenthal is governed in the first instance by Rule 45, "non-party subpoenas are also subject to the parameters of Rule 26.6." *Crescent City Remodeling, LLC v. CMR Constr. & Roofing, LLC*, 643 F. Supp. 3d 613, 617 (E.D. La. 2022).  "Both Rules 45 and 26 authorize the court to modify a subpoena [] when its scope exceeds the boundaries of permissible discovery… Although a party does not have standing under Rule 45 to challenge burden or relevance in the absence of a personal right or privilege with respect to the materials subpoenaed, a party does have standing to challenge relevance under Rule 26(c)." *Id.* at 618. This is precisely what Defendant seeks. Accordingly, Defendant has standing to seek a Motion to Quash a Deposition that is irrelevant, unduly burdensome, and seeks information which is privileged.

### b. Defendant has not Placed Mr. Rosenthal's Knowledge at Issue and Dr. Monroe's Employment Status is not Contested.

Plaintiffs argue that the Defendant has placed the knowledge of Mr. Rosenthal to relevant information directly at issue by identifying Mr. Rosenthal as an individual who "participated in, consulted with, and/or provided information, documents and/or other information used, referred

4

to, or relied upon in any way in answering and/or assisting in answering" the Plaintiffs' First Interrogatories to the Defendant. (Docket No. 74 at 7). Additionally, Mr. Rosenthal personally executed the "Employment Agreement" between NeoHealth and Dr. Monroe indicating that that Mr. Rosenthal had direct involvement with and specific knowledge of Dr. Monroe's employment and services as a physician employee of NeoHealth. *Id.* at 8. However, simply being noted in one Interrogatory as having participated in, consulted with and/or providing information used in responding to discovery does not automatically make someone's knowledge or involvement relevant. Simply asking Mr. Rosenthal how he assisted in preparing the United States' discovery responses "can have no possible bearing on the subject matter of the action." *Snowden v. Connaught Lab'ys, Inc.*, 137 F.R.D. 336, 341 (D. Kan. 1991) (Discovery should be considered relevant "unless it is clear that the information sought can have no possible bearing on the subject matter of the action."). Plaintiffs' request to depose Mr. Rosenthal simply because Defendant identified him as assisting with written discovery has no bearing on Plaintiffs' allegations of medical negligence against Dr. Monroe and is therefore irrelevant.

Plaintiffs claim that Mr. Rosenthal should be deposed regarding Dr. Monroe's employment and services as a physician is likewise unpersuasive. The parties agree that Dr. Monroe was an employee of NEOHealth acting within the course and scope of his employment at the time of the care at issue. (Docket No. 75 at 4). Accordingly, the fact that Mr. Rosenthal "personally executed" Dr. Monroe's employment agreement and has "specific knowledge of Dr. Monroe's employment," is irrelevant. *Id.* Any testimony elicited from Mr. Rosenthal regarding Dr. Monroe's employment would be "unreasonably cumulative or duplicative." *Id.* "While the court has considerable discretion with regard to regulating discovery which is exchanged in a lawsuit, discovery from third-parties in particular must, under most circumstances, be closely regulated." *Aero Tech, Inc.*

*v. Great Am. Ins. Co.*, No. CV 22-476 WJ/GJF, 2023 WL 5002618, at *3 (D.N.M. Aug. 3, 2023) *citing Taylor v. Grisham*, Civ. No. 20-267 JB/JHR, 2020 WL 6449159 at *1, 2020 U.S. Dist. LEXIS 205965 at *2 (D.N.M. Nov. 3, 2020) (unpublished) (quotation omitted). Thus, "[i]t is generally recognized that a non-party involuntarily embroiled in civil litigation should not be subjected to undue burden or significant expense merely by virtue of having received a subpoena." *Id.* (quotation omitted); accord Fed. R. Civ. P. 45(d). Since the information Plaintiffs seek from Mr. Rosenthal is cumulative or duplicative of information already in evidence, the Court sees no reason why Mr. Rosenthal should be involuntarily embroiled into this civil lawsuit, any more than he already may have been when he no doubt provided the employment file in the first place. Accordingly, Plaintiff has filed to provide a sufficient basis as to why Mr. Rosenthal's testimony regarding Dr. Monroe's employment is relevant.

      **c. Plaintiffs Cannot Pursue their Negligent Hiring, Retention, or Supervision Claims.**

Plaintiffs additionally argue Mr. Rosenthal should be deposed because they have pled claims for negligent supervision or retention based on the acts or omissions of identifiable individuals (e.g. a specific NeoHealth supervisor/administrator failing to act on known unsafe conditions related to Dr. Monroe). (Docket No. 74 at 14). While corporate negligence is not a permissible claim against the United States under the FTCA, Plaintiffs argue the government can be held liable for the actions or omissions of its individual employees -where the underlying state law recognizes such a claim, as Oklahoma does. *Id.* at 14-15. As Defendant points out, Plaintiffs are incorrect in this argument as this issue has been previously addressed in this district. The FTCA's discretionary function exception, 28 U.S.C. § 2680(a), retains the United States' sovereign immunity from such claims, even if actionable against private parties under state law. *Webb v. United States*, No. 23-cv-126, 2023 WL 8477995, at *3 (E.D. Okla. Dec. 7, 2023) ("The claim for

6

negligent selection (or hiring), training, and supervision against the employer is certainly separate and apart from the medical negligence claim for the vicarious liability for the acts of the employee under Oklahoma law. . . . Plaintiffs' contention that these claims should be subsumed into the assertion of general medical negligence is contrary to law and rejected."); accord *Domme v. United States*, 61 F.3d 787, 788, 793 (10th Cir. 1995) (discretionary function barred claim "government was liable for the DOE's negligent oversight of Sandia"). Plaintiffs' request to depose Mr. Rosenthal regarding a claim they cannot pursue should be quashed.

### d. Plaintiffs' Reasons for Deposing Mr. Rosenthal are Irrelevant to the Alleged Claims, and Duplicative of the Evidence Already Presented.

Finally, Plaintiffs argue they should be allowed to depose Mr. Rosenthal to discover whether Dr. Monroe's substance abuse (or mental health) problems for which he sought treatment after the care at issue directly related to his conduct during the time of the care and/or whether it impacted his ability to meet or resulted in conduct that fell below the applicable standard of care. (Docket No. 74 at 9-12). Apart from the privacy violations as argued in Defendant's Motion to Quash, Plaintiffs fail to provide any evidence to suggest that Mr. Rosenthal even has this information to begin with. Though the scope of discovery is broad, it is not unlimited. *Barnett v. Sears, Roebuck and Co*. 80 F. R. D. 662, 664, (W.D. Okla. 1978), *citing Miller v. Doctor's General Hospital* 76 F.R.D. 136, 139 (W.D. Okla. 1977). The basic positive touchstone is relevance, including the reasonable possibility that the information sought would lead to admissible evidence. *Id.*

Here, Plaintiffs seek information that they claim is "limited factual information as to the 'when and why' in order to determine whether the treatment Dr. Monroe has admitted to receiving *after* the care in this case is relevant." (Docket No. 74 at 11) (emphasis added). "Plaintiffs admit that evidence of a defendant physician's substance abuse treatment subsequent to the dates of the

7

care at issue is generally *not admissible* unless it directly relates to the physician's conduct *during the treatment period in question.*" *Id.* (emphasis added). These two sentences in Plaintiffs' Response brief resolve the issue at hand. Dr. Monroe received treatment *after* the care at issue, making his subsequent treatment *not admissible* because it does not relate to Dr. Monroe's conduct during the treatment period in question. There is no evidence that simply because Dr. Monroe underwent mental health or substance treatment later, means Dr. Monroe was having issues at the time of care. In fact, there is evidence to the contrary in the form of testimony from the nurses and Dr. Monroe himself. (*See* Docket Nos. 73 at 3-4 and 75 at 7). Plaintiffs have not presented any evidence to support their claim that additional discovery is necessary on this issue.

"Rule 26(b) permits the examination of a deponent on any matter 'which is relevant to the subject matter involved in the pending action.' Rule 30(b) provides that 'for good cause shown' the court may make any order 'which justice requires to protect the party or witness from annoyance, embarrassment, or oppression.' Rule 45(b) authorizes the court to 'quash or modify the subpoena if it is unreasonable and oppressive.'" *Covey Oil Co. v. Cont'l Oil Co.*, 340 F.2d 993, 997 (10th Cir. 1965). Accordingly, pursuant to Fed. R. Civ. P. 26(b) and 45 (b), Defendant's Motion to Quash the Deposition Subpoena of Mr. Rosenthal is GRANTED.

### III.  Conclusion

For the foregoing reasons, the Court finds that the Plaintiffs' request to depose Scott Rosenthal is not supported by the scope of permissible discovery under Federal Rules of Civil Procedure 26 and 45. The proposed deposition seeks information that is irrelevant, unduly burdensome, and cumulative of evidence already obtained, and it fails to establish that Mr. Rosenthal possesses unique or admissible knowledge relevant to Plaintiffs' medical negligence claims. Moreover, Plaintiffs' attempts to assert negligent hiring, supervision, or retention claims

are barred under the Federal Tort Claims Act's discretionary function exception and are therefore legally impermissible. Additionally, there is no evidentiary basis to support Plaintiffs' theory that Dr. Monroe's post-treatment mental health or substance use is relevant to the care provided during the delivery at issue. As such, the Defendant's Motion to Quash the subpoena for Mr. Rosenthal's deposition is GRANTED.

DATED this 5th day of August, 2025.

_____
D. Edward Snow
United States Magistrate Judge