IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| K.C., a minor child, by and through his parents and next friends, Jenna Blizzard and Hunter Coughran; JENNA BLIZZARD, individually; and HUNTER COUGHRAN, individually,<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 23-CV-339-DES<br>)<br>)<br>)<br>)<br>) |

**OPINION AND ORDER**

  This matter comes before the Court on Plaintiffs' Motion to Compel Limited Supplementation of Factual Discovery. (Docket No. 79). On August 1, 2025, Plaintiffs filed the present Motion seeking an order compelling Defendant to supplement factual discovery regarding the substance abuse and/or mental health treatment received by Calvin Monroe, M.D. *Id*. Defendant filed a Response to the Motion on August 12, 2025 (Docket No. 85) to which Plaintiffs filed their Reply on August 15, 2025 (Docket No. 87). The issues pertaining to the Motion to Compel have been fully briefed. For the reasons set forth below, Plaintiffs' Motion to Compel Limited Supplementation of Factual Discovery is DENIED.

  This is a medical malpractice birth injury case brought by Plaintiffs pursuant to the Federal Torts Claims Act ("FTCA") against the United States of America alleging the negligent management of Plaintiff Jenna Blizzard's labor and delivery by obstetrician Calvin Monroe, M.D. The issue at trial in this matter is whether during Dr. Monroe's management of Ms. Blizzard's induction, labor, and delivery, he "use[d his] best judgment and appl[ied] with ordinary care and diligence the knowledge and skill that is possessed and used by other specialists in good standing

1

engaged in the same special field of practice at that time." Okla. Civil Jury Instr. 14.2. This is the same liability question at issue in all medical malpractice cases. *See Smith v. Hines*, 261 P.3d 1129, 1133 (Okla. 2011) (setting forth elements of medical negligence claim). (Docket No. 73 at 2).

The parties have engaged in discovery, both written and oral, in which information regarding whether Dr. Monroe ever received treatment for any mental health and/or substance abuse problems during his professional career was sought. *Id.* at 3. In response to Interrogatories, the United States invoked Dr. Monroe's right to privacy but further responded that "[b]efore and at the time of all obstetrical care at issue in plaintiffs' complaint, no." (Docket No. 73-3 at 2). During his deposition, Dr. Monroe testified that the treatment he sought was after August of 2020,[1] had nothing to do with him no longer being employed with NEO Health, and was for issues that did not exist at the time he was providing care to the Plaintiffs in this case. (Docket No. 73 at 3). Despite this testimony, Plaintiffs have attempted to obtain additional information regarding "when, where, and why Dr. Monroe obtained treatment for substance abuse and/or mental health problems following the dates of the care at issue in this case (August 8, 2020)." (Docket No. 79 at 3).

Plaintiffs believe this information is "relevant and probative of Plaintiffs' claims and allegations," *id.* at 1, and "that the substance abuse and/or mental health conditions for which Dr. Monroe admittedly sought treatment after August 8, 2020, likely existed at the time of, and may have contributed to Dr. Monroe's negligent medical care and treatment in this case." *Id.* at 8. In support of this belief, Plaintiffs identify text messages and at least four phone calls between Dr. Monroe and "a physician in Chicago, Illinois, who, along with his wife (who is also a physician), are affiliated with a[n] alcohol/substance abuse treatment center in the Chicago area." *Id.* at 5. Plaintiffs also argue that "Dr. Monroe opened the door to the disclosure of this factual information

---

[1] August 6, 2020 to August 8, 2020 are the dates of the obstetrical care and treatment at issues in this case. (Docket No. 2 at 5-6).

in the first place." *Id.* at 8. The first piece of evidence Plaintiffs cite for this information being relevant and probative is speculative, at best, and the second is simply untrue.

The record before the Court indicates that Dr. Monroe did not "open the door" to the disclosure of this information, but rather, Plaintiffs sought an interrogatory to which Dr. Monroe responded. (*See* Docket No. 79-1 at 2). In that Interrogatory Request, Plaintiffs asked: "Has Dr. Monroe ever sought treatment (medical or otherwise) for any mental health and/ or substance abuse problems (including alcohol) at anytime prior to or during his professional career . . . ?" *Id.* The Defendant responded with objections, but then answered: "Subject to, and without waiving, the foregoing objections, the United States responds as follows: **Before and at the time** of all obstetrical care at issue in plaintiffs' complaint, no." *Id.* (emphasis added). Then, during Dr. Monroe's deposition, counsel for the Plaintiffs asked him if the issues for which he sought treatment existed in August of 2020 when he was providing care to the plaintiffs in this case, to which Dr. Monroe testified, "Absolutely not." (Docket No. 79-2 at 4-5). Nothing contained in the record would indicate to the Court that Dr. Monroe "opened the door" to the disclosure of this information.

As to the evidence of phone communications between Dr. Monroe and an unnamed physician in Chicago, the Court is not persuaded that this shows anything other than one physician communicated with another physician. Plaintiffs' assertion that Dr. Monroe was suffering from mental and/or substance abuse issues at the time of the delivery at issue since the physician that Dr. Monroe communicated with was affiliated with an "alcohol/substance abuse treatment center in the Chicago area," is nothing more than pure speculation.

Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense

and proportional to the needs of the case . . . Fed. R. Civ. P. 26(b)(1). The scope of discovery is broad, but not unlimited. Here, the information Plaintiffs seek has either been provided through verified interrogatory or deposition testimony, is privileged and therefore not subject to discovery, or is irrelevant and disproportional to the needs of the case.

Plaintiffs request for information regarding the timing of Dr. Monroe's treatment has been provided through both interrogatories and deposition testimony. Defendant's Interrogatory response could not have been clearer. Before and at the time of all obstetrical care at issue in Plaintiffs' complaint, Dr. Monroe did not seek treatment for mental health and/or substance abuse issues. (*See* Docket No. 79-1 at 2). Based on this, Plaintiffs wanted to know if the issues for which Dr. Monroe eventually sought treatment for **existed** in August of 2020 when he was providing care to Plaintiffs, which is the exact question Plaintiffs' counsel posed to Dr. Monroe directly in deposition to which Dr. Monroe testified, "Absolutely not." (Docket No. 79-2 at 4-5). The exact timing of Dr. Monroe's treatment is not relevant to the claims at issue here, because the evidence presented shows: 1) Dr. Monroe's treatment was after the care at issue, and 2) the issues for which Dr. Monroe eventually sought treatment for did not exist at the time of the care at issue. Plaintiffs have failed to provide any further evidence to show that Dr. Monroe was suffering from any mental health or substance abuse problems at the time of the care at issue in this case. Furthermore, Plaintiffs Reply sets forth their theory of liability against Dr. Monroe and it is not predicated on Dr. Monroe having suffered from any mental health or substance abuse issues at the time of the care at issue here. Accordingly, Plaintiffs request as to supplementation of factual discovery as to when Dr. Monroe sought treatment is DENIED.

Plaintiffs request for information regarding where Dr. Monroe sought treatment is not relevant to the issues in this case. Even armed with such information, Plaintiffs admit they cannot

seek Dr. Monroe's medical records. (Docket No. 79 at 12). The case law Plaintiffs cite in a footnote to support the argument that the identity of Dr. Monroe's provider and time of treatment is not privileged is inapplicable to the facts of this case. Dr. Monroe is not a plaintiff who has put his medical condition at issue by seeking damages for emotional distress and he has not waived his patient/psychotherapist privilege. (*See* Docket No. 85 at 2-4). Accordingly, Plaintiff's request for supplemental information as to where Dr. Monroe sought treatment is DENIED.

Finally, Plaintiffs' request for information as to why Dr. Monroe sought treatment is privileged and not discoverable. "[A] psychotherapist privilege covers confidential communications made to licensed psychiatrists and psychologists." *Jaffee v. Redmond*, 518 U.S. 1, 15 (1996). As both parties know, the Supreme Court has held that "confidential communications between a licensed psychotherapist and [their] patients in the course of diagnosis or treatment are protected from compelled disclosure." *Id.* Dr. Monroe has not waived this privilege, and while Plaintiffs argue that they do not seek the privileged communications, only the reason for the treatment, this Court will not carve out an exception to *Jaffee* where the information sought is irrelevant to the claims at issue. Accordingly, Plaintiffs' request for supplemental information as to why Dr. Monroe sought treatment is DENIED.

The record establishes that Dr. Monroe did not seek treatment prior to or during the care at issue in this case, and Plaintiffs have presented no evidence to suggest otherwise beyond speculation. The timing of Dr. Monroe's treatment occurred after the alleged malpractice and is therefore not relevant. Finally, the reasons for Dr. Monroe's treatment are protected by the psychotherapist-patient privilege under *Jaffee* and are not discoverable, particularly where the information is neither relevant nor proportional to the needs of the case. Accordingly, Plaintiffs' Motion to Compel Limited Supplementation of Factual Discovery (Docket No. 79) regarding

when, where, and why Dr. Monroe sought treatment for mental health and/or substance abuse issues is DENIED.

DATED this 22nd day of August, 2025.

_____
D. Edward Snow
United States Magistrate Judge